UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| _____ ) | | |
| ) | | |
| CATHOLIC LEADERSHIP ) | | |
| COALITION OF TEXAS, dba TEXAS ) | | |
| LEADERSHIP COALITION, and ) | | |
| the TEXAS LEADERSHIP ) | | |
| COALITION – INSTITUTE FOR ) | | |
| PUBLIC ADVOCACY, ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | Civil Case No. 1:12-cv-566 | |
| ) | | |
| DAVID A. REISMAN, in his official ) | | |
| Capacity as Executive Director of the Texas ) | DECLARATORY AND INJUNCTIVE | |
| Ethics Commission; HUGH C. AKIN; JIM ) | RELIEF SOUGHT | |
| CLANCY; TOM HARRISON; PAUL W. ) | | |
| HOBBY; BOB LONG; PAULA M. ) | | |
| MENDOZA; TOM RAMSAY; and CHASE ) | | |
| UNTERMEYER, in their official capacity ) | | |
| as members of the Texas Ethics ) | | |
| Commission; SUSAN REED, in her ) | | |
| official capacity as District Attorney for ) | | |
| Bexar County, Texas, ) | | |
| ) | | |
| ) | | |
| Defendants. ) | | |
| _____) | | |

## VERIFIED COMPLAINT[1]

Plaintiffs Catholic Leadership Coalition of Texas and Texas Leadership Coalition – Institute for Public Advocacy bring this action for declaratory and injunctive relief, as well as nominal damages, and complain as follows:

---

[1] The Verification of Phillip C. Sevilla for Plaintiffs is attached as Exhibit A.

## **INTRODUCTION**

1.      This is a First Amendment constitutional challenge to provisions of the Texas Election Code that effectively prevent Plaintiffs from speaking about candidates in Texas's July 31 primary runoff elections.   Plaintiffs challenge section 253.037(a) (in conjunction with 253.031(b)) because it is a prior restraint on speech that prevents individuals from jointly funding independent political advertisements in time to influence voters before the election. Section 253.037(a) also violates Plaintiffs' First Amendment rights by forcing them to collect money from an arbitrary number of additional persons before Plaintiffs may speak meaningfully about candidates.    Plaintiffs also challenge section 253.094(a) because it prevents an incorporated nonprofit, social welfare organization from transferring its contact list to a political committee for distribution of the committee's independent political advertisements.

## **PRELIMINARY STATEMENT**

2.      Texas voters are going to the polls on July 31, 2012, to cast their ballots in primary runoff elections that will determine nominees for offices from district court judge all the way up to United States Senate.   In the month between now and election day, candidates, political parties, and entrenched interests with established political action committees will spend millions of dollars communicating their views with Texas voters and working to drive turnout to their advantage.   Yet, for any group of Texans—not already registered as a political committee—who wish to communicate their views about the candidates in these runoff races, or make contributions to candidates, it is *too late*.   Ordinary individuals are absolutely banned under Texas law from exercising these most fundamental of republican rights in time to influence the primary runoff election, even though the election is more than a month away.   This case

**Verified Complaint**                                          2

challenges this flagrant violation of Plaintiffs' First Amendment rights to free speech and association.

3.      In late 2011, a group of lay Catholics in Bexar County, Texas began an organized effort to cultivate leaders who would promote and defend authentic Christian moral principles, and to educate Catholics about the moral precepts of the Church pertaining to their obligations and responsibilities as Catholic voters.

4.      They formed the Catholic Leadership Coalition of Texas, a Texas nonprofit corporation, commonly known as the Texas Leadership Coalition (TLC).  As a critical part of this overall effort, the TLC wished to speak about specific Texas candidates and elections occurring in 2012.  The TLC therefore registered a separate "general purpose committee" (GPAC) as required under Texas law.  This committee is called the Texas Leadership Coalition – Institute for Public Advocacy (TLC-IPA), and was registered with the Texas Ethics Commission (the Commission) on June 7, 2012.

5.      Despite registering a separate committee and assuming the significant administrative burdens associated therewith, the TLC-IPA is *banned* from speaking before the primary runoff elections.  More precisely, the ordinary, lay Catholics who constitute and support the TLC-IPA, who merely wish to pool their resources and communicate their political views with neighbors in time to influence their votes, are *banned* from speaking before the elections. This is because Texas law requires that any two or more persons who wish to act jointly to make political expenditures or contributions—including *independent* expenditures uncoordinated with any campaign—must first register with the state as a GPAC, which involves appointing a treasurer and assuming significant administrative and reporting obligations.  Tex. Elec. Code §§ 252.001; 253.031(b); 254.151 et seq.  The GPAC is then required to wait 60 days from the date

**Verified Complaint**                                    3

of registration, and obtain contributions from ten or more persons, before making or authorizing more than $500 in aggregate political expenditures.  *Id.* § 253.037(a); Tex. Ethics Comm. Adv. Op. No. 161 (1993).

6.      This case presents a constitutional challenge to Texas Election Code § 253.037(a), facially and as-applied to a committee that only engages in independent expenditures. Subsection (a)'s  requirements that a general purpose committee register, wait 60 days, and collect contributions from ten persons before it may expend (or even agree to expend) more than $500 each impose a free speech "waiting period."  This constitutes an outright ban on protected political speech—whether such speech be in the form of independent expenditure advertisements or contributions to a candidate—that is unjustifiable under any theory of the First Amendment to the United States Constitution.  The ten-contributor requirement of subsection (a)(2) additionally constitutes forced political association which is also inconsistent with the First Amendment.

7.      This case further presents a challenge to Texas Election Code § 253.094(a), which prohibits corporations from making "a political contribution that is not authorized by this subchapter," to the extent such provision prohibits corporations, including nonprofit corporations like the TLC, from making contributions to political committees for use with respect to *independent* expenditures that are uncoordinated with the relevant candidate or party committee. *See EMILY's List v. FEC*, 581 F.3d 1 (D.C. Cir. 2009).

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343. This civil action arises under the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.  Plaintiffs seek a declaration of their rights in this case of

**Verified Complaint**                                    4

actual controversy within this court's jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

9.     Venue is proper in this Court under 28 U.S.C. 1391(b) because defendant David A. Reisman resides in the Western District of Texas and all defendants reside in Texas.  The Texas Ethics Commission is located in this judicial district, and the Executive Director and members of the Commission perform their official duties in this district.   Additionally, a substantial part of the events giving rise to this claim occurred in this district.

## PARTIES

10.     Plaintiff Catholic Leadership Coalition of Texas, commonly known as the Texas Leadership Coalition (TLC), is an incorporated non-profit 501(c)(4) organization founded in 2011 by lay Catholics in San Antonio, Texas.  The TLC was founded for the purpose of public education and advocacy; specifically, to develop resources and opportunities to inform Catholics about the moral precepts of the Church pertaining to their responsibilities as Catholic voters.  Its headquarters are located at 3503 Millgrove St., San Antonio, TX, 78230.  The TLC endorsed a slate of candidates in the Texas primary elections held May 29, 2012, and posted this endorsement list on its website and in an issue of a local community publication.  Because 501(c)(4)s are limited in the proportional amount of candidate advocacy they may undertake, the TLC board voted to establish a political committee in order to freely conduct political advocacy without jeopardizing its tax-exempt status under the Internal Revenue Code.  The TLC may also need and establish new political committees to participate in future elections.

11.     Plaintiff Texas Leadership Coalition –Institute for Public Advocacy (TLC – IPA) is the political committee established by the TLC.  It is a "general-purpose committee" under Texas campaign law, registered with the Commission as of June 7, 2012, and headquarted at

**Verified Complaint**                                       5

3503 Millgrove Street, San Antonio, Texas 78230.   TLC-IPA intends to engage in express political advertising for certain candidates for public office who represent the TLC-IPA's values. As its first such project, the TLC-IPA intends to spend money to produce and distribute an advertisement urging citizens to vote for a specific candidate competing in the primary runoff elections to be held July 31, 2012.  The TLC-IPA will produce and distribute this advertisement independently; that is, without with the "consent or approval" of the supported candidate or her campaign.  The TLC-IPA further intends to be involved in future elections through production and dissemination of independent political advertising uncoordinated with any candidates or campaigns.  Phillip C. Sevilla is treasurer of TLC-IPA and a board member of the TLC, and he makes decisions regarding TLC-IPA's independent expenditures in consultation with TLC's other board members.

12.     Defendant David A. Reisman is the Executive Director of the Texas Ethics Commission, which is located at 201 East 14th St., 10th Floor, Austin, Texas 78701.  Defendants Hugh C. Akin, Jim Clancy, Tom Harrison, Paul W. Hobby, Bob Long, Paula M. Mendoza, Tom Ramsay, and Chase Untermeyer are members of the TEC.  The TEC has ultimate authority to administer and enforce the statutory provisions at issue in this case, including initiating civil enforcement actions or referring matters to the appropriate prosecuting attorney for criminal prosecution.  These individuals are sued in their official capacity.

13.     Defendant Susan Reed is the District Attorney for Bexar County, Texas, who may criminally prosecute violations of the statutes at issue in this case in the county in which plaintiffs reside and plan on conducting their First Amendment activities.  Her office is located at 300 Dolorosa Street, 5th Floor, San Antonio, Texas 78205.  She is sued in her official capacity.

## STATEMENT OF FACTS

14.     The TLC is a nonprofit 501(c)(4) organization, incorporated under Texas law, whose mission is primarily educational.  It is a membership-based organization and collects dues from its members to finance its activities.  The organizers and supporters of the TLC are predominantly lay Catholics who are proud of their faith and believe strongly in abiding by the principles espoused by their Church.  They further believe that many Catholic and Christian candidates and officeholders depart from the principles of their faith in the discharge of their public duties, particularly with respect to issues of protection for the unborn and traditional marriage.  They also believe too many Catholic voters cast ballots for such politicians, and they recognize the deleterious effect the combination of these factors has had on the moral and social fabric of their communities.  These lay Catholics founded the TLC as a vehicle through which to educate their fellow Catholics regarding the true precepts of the Church and the importance of incorporating such principles in one's approach to civic responsibility.  Since its founding in October 2011, the TLC has been active in its educational and religious mission.  Among many other activities, the TLC has produced a regular email newsletter for supporters, sponsored a Catholic men's retreat focused on Thomas More: A Man for All Seasons which was attended by 34 Catholic men; organized and led a major rally in downtown San Antonio, and proceeded with planning and organization for other such activities.

15.     Recently, the Department of Health and Human Services announced that it would mandate that all insurance plans provide coverage for contraceptives and sterilization services. To faithful Catholics such as those constituting the TLC, this policy represents an unconscionable government intrusion into a matter of faith and morals, mandating action that would violate deeply held religious principles of Catholics.  Although only one of many issues,

**Verified Complaint**                                    7

the HHS mandate illustrates the impact elected officials and public policy have on people of faith, and provided an even greater sense of purpose to the TLC's campaign efforts.

16.     The TLC has a First Amendment right to use its general treasury funds to speak independently about candidates, as recognized under federal and Texas law. *See Citizens United v. FEC*, 130 S. Ct. 876 (2010); Op. Tex. Ethics Comm'n No. 489 (2010), *superseded in part by* H.B. 2359, 82nd Leg., R.S. (2011). The TLC exercised its free speech rights in endorsing a slate of candidates in Texas' May 29 primary elections. Although the actual expenditures involved in distributing these endorsements were de minimus, the TLC sought the advice of counsel experienced in election law, acquired an electronic filing password from the TEC, and filed a report of its independent expenditures. However, the amount of express election-related activity the TLC may undertake is limited by federal law as a condition of its tax-exempt status. *See* Rev. Rul. 81-95, 1981-1 C.B. 332 (political activity may not be the "primary" activity of a 501(c)(4)). Desiring to engage in further speech regarding specific candidates and elections in 2012, the TLC realized it needed to establish a separate campaign fund as permitted under the federal tax rules. *See* 26 U.S.C. § 527(f)(3) (permitting establishment by tax-exempt organizations of a "separate segregated fund"). The TLC established the Texas Leadership Coalition – Institute for Public Advocacy as a "general-purpose committee" (GPAC) with the Texas Ethics Commission on June 7, 2012. By maintaining a separate account and acting through the TLC-IPA, the TLC and its supporters may speak freely about candidates, issues and elections without such political activity being attributed to the TLC itself and jeopardizing the TLC's tax-exempt status. *See Id.* ("separate segregated fund" is treated as a separate organization).

17.     The TLC-IPA desires only to engage in independent expenditure advertising supporting and opposing candidates for office, and does not desire to make contributions to candidates, political parties, or other political committees.

18.     One candidate the TLC-IPA supports is Dr. Donna Campbell, a non-incumbent candidate for Texas Senate District 25.  Dr. Campbell emerged from a three-person primary to earn a spot in the runoff election against the incumbent, Senator Jeff Wentworth.  Dr. Campbell shares the TLC-IPA's values regarding several issues of great importance to the TLC-IPA, and the TLC-IPA intends to advocate her election.  The TLC-IPA intends to produce and distribute a print advertisement expressly advocating her election, which will contain a list of persons who have endorsed her, in time to influence voters before the runoff on July 31.

19.     TLC-IPA is currently planning for the production and distribution of this print advertisement supporting Dr. Campbell, but has not hired a third party to produce copy, or contracted with any specific media company in which the ad will run, because § 253.037(a) prohibits it from expending or obligating the funds required.

20.     TLC-IPA also intends to produce and broadcast a radio advertisement supporting Dr. Campbell, but it has not hired a third party to produce copy, or contracted with any specific media company in which the ad will run, because § 253.037(a) prohibits it from expending or obligating the funds required.

21.     TLC-IPA additionally would like to distribute a slate of endorsements that will include all the candidates it supports in the primary runoffs.  The TLC-IPA intends to distribute this advertisement by the most effective means available that the TLC-IPA can afford.

22.     With a $500 cap, a group can only mail even the simplest correspondence or print advertisement to 833 individuals (assuming a mere $0.15 for printing and paper and $0.45

postage ($0.60 x 833 = $499.80)). There were 518,625 voting age adults in Senate District 25 in the 2000 Census.   *See* District Analysis: District 25, Population and Household, http://www.fyi.legis.state.tx.us/fyiwebdocs/HTML/senate/dist25/r1.htm.

23.     A quarter-page color advertisement in the San Antonio Express News Sunday Star edition, which includes online for 7 days, costs $2,114 for a single Sunday.   Hearst Media Services, Retail Advertising Ratebook, Rate Card No. 67, eff. January 2012.[2]

24.     The TLC-IPA operates independently.   These intended advertisements have been and will continue to be planned, produced, and disseminated independently of any political candidates and political parties.   TLC-IPA's expenditures for these advertisements will therefore be "direct campaign expenditures" under the Texas Election Code because they will be expenditures made "in connection with a campaign for an elective office" and "without the prior consent or approval" of any candidate.   *See* Tex. Elec. Code §§ 251.001(2), (3), (7), (8); 1 Tex. Admin. Code § 20.1(5)(A).

25.     As of the date of filing, TLC-IPA has collected no monetary contributions.   This is partly due to the fact that the individuals running TLC and TLC-IPA have been forced to devote their already-limited meeting time to discussions regarding campaign laws and this action to vindicate their rights, leaving no time for fundraising.   TLC-IPA intends to hire a third party to develop and host a website through which TLC-IPA can solicit and accept contributions from the general public to fund its intended advertisements.   It has not yet done so because § 253.037(a) prohibits it from expending or obligating the funds required.

26.     The July 31 runoff elections will be held 54 days from the date TLC-IPA was registered as a general-purpose committee with the Commission.   The first ballots will be cast

---

[2] Available at http://www.express-news.com/advertising/home/2012_retailRates.pdf (last visited June 27, 2012).

during the early voting period beginning July 23, only 46 days from the date of TLC-IPA's registration.

27.     The TLC intends to transfer its contact list to TLC-IPA without remuneration. TLC-IPA intends to distribute copies of its advertisements via email, to this list, and to use it for fundraising.   The TLC has worked since its inception to gradually build a list of contact information of individuals interested in the TLC's educational and public issue activities.   Often when the TLC has events, attendees are added to the list, and additional contacts are added regularly by TLC members and directors.   This list is not used for any business purpose, but it has real value to an ideological public advocacy organization like the TLC and to a political committee like the TLC-IPA.

## Review of Relevant Law

28.     Several provisions of the Texas Election Code are relevant to plaintiffs and their political speech.  First, the individuals who will be operating and making decisions for TLC-IPA constitute a *political committee* because "political committee means a group of persons that has as a principal purpose accepting political contributions or making political expenditures."  Tex. Elec. Code § 251.001(12).  *See also* 1 Tex. Admin. Code § 20.1(14) (providing that "the term does not include a group composed exclusively of two or more individual filers or political committees required to file reports under Election Code, Title 15 … who make reportable expenditures for a joint activity such as a fundraiser or an advertisement.").   When read in conjunction with Texas Election Code § 254.261, it is clear that the regulatory definition in the Administrative Code just cited does not apply to the individuals supporting TLC-IPA such that they could avoid status as a political committee.  That is because an individual can only qualify as an "individual filer" with respect to direct campaign expenditures if he or she is "not acting in

concert with another person" and makes such expenditure "from the person's own property." Tex. Elec. Code § 254.261. TLC-IPA was formed with the express purpose of soliciting and accepting funds from the general public and spending those funds on political advocacy (that is, for the purpose of "accepting political contributions" and "making political expenditures"). Those involved in TLC-IPA are acting in concert with one another to further their common political ends, and pooling their resources to do so. *See Osterberg v. Peca*, 12 S.W.3d 31, 46 (Tex. 2000), discussed *infra* at ¶ 32.

29.    *"Political expenditure"* means either a "campaign expenditure" or an "officeholder expenditure." Tex. Elec. Code 251.001(10). A *"campaign expenditure"* is an expenditure—whether made before, during, or after an election—"made by any person in connection with a campaign for an elective office or on a measure." *Id.* § 251.001(7).

30.    The definition of "expenditure" expands the scope of the above definitions. *"Expenditure"* is defined in extremely broad terms to mean "a payment of money or any other thing of value and includes an agreement made or other obligation incurred, whether legally enforceable or not, to make a payment." *Id.* 251.001(6).

31.    *"Political contribution"* means either a "campaign contribution" or an "officeholder contribution." *Id.* 251.001(5). A *"campaign contribution"* is a "contribution to a candidate or political committee that is offered or given with the intent that it be used in connection with a campaign for elective office or on a measure." *Id.* 251.001(3). As with the expenditure definition, "whether a contribution is made before, during, or after an election does not affects its status as a campaign contribution." *Id.* A *"contribution"* is a "direct or indirect transfer of money, goods, services, or any other thing of value and includes an agreement made

**Verified Complaint**                                                         12

or other obligation incurred, whether legally enforceable or not, to make a transfer…." *Id.* 251.001(2).

32.     Because the TLC-IPA was established with the principal purpose of "accepting political contributions" and "making political expenditures," it constitutes a "political committee" under the definition at section 251.001(12) of the Texas Election Code.  Under Texas law, no group of two or more individuals pooling their resources to engage in political expenditures may avoid classification as a "political committee" of one type or another.  It is true that "[a] person *not acting in concert with another person* who makes one or more direct campaign expenditures in an election *from the person's own property*" is required to file a report if such expenditures exceed $100, but is not required to file a campaign treasurer appointment.  Tex. Elec. Code § 254.261(a), (d) (emphasis added).  "However," as the Texas Supreme Court has observed, "if an individual acts in concert with another, the individuals must form a political committee, appoint a campaign treasurer, and file that appointment with the appropriate authority before making direct campaign expenditures that exceed $500."  *Osterberg v. Peca*, 12 S.W.3d 31, 46 (Tex. 2000).

33.     Texas law recognizes two general categories of political committees:  general purpose committees and specific purpose committees.   While the statutory definitions are difficult to comprehend, given the usage of the term "unidentified," the Commission provides an explanation of the difference between general and specific purpose committees, which helps illuminate the statutory definitions.  An excerpt of that explanation is as follows:

> **Supporting or opposing unidentified candidates.** A political committee that supports or opposes two or more candidates who are unidentified or who are seeking offices that are unknown is a general-purpose political committee.

A general-purpose committee devoted to a particular point of view does not become a specific-purpose committee because it lends support to a particular candidate in an election

**EXAMPLE:** *A political committee that supports candidates who oppose gambling is a general-purpose political committee. The candidates supported by this political committee are "unidentified" because the political committee is devoted to a particular issue or point of view, not to particular candidates. If a candidate's views on gambling change, the candidate may gain or lose the committee's support*

**EXAMPLE:** *A political committee that supports candidates who are members of a particular political party is a general-purpose political committee. (Some political committees affiliated with political parties are subject to different reporting requirements from other general-purpose committees.*

"General Purpose and Specific Purpose Political Committees," Campaign Finance Guide for Political Committees at 2-3 (revised Sept. 28, 2011).[3]  The TLC-IPA is categorized as a "general purpose committee" because the TLC-IPA's purpose is not to support specific, identified candidates, but rather to support candidates who share the TLC-IPA's values, *see supra* ¶ 10, including multiple candidates who are presently "unidentified."  *Id.* § 251.001(14).  *See, e.g.*, Op. Tex. Ethics Comm'n No. 320 (1996) ("Because the committee's purpose would be to support candidates of its party in general, whether currently identified or not, the group would be a general-purpose committee"); *cf.* Tex. Elec. Code § 251.001(13) (defining "specific-purpose committee").

34.    As a Texas general-purpose committee, the TLC-IPA's speech is severely constrained—in fact, entirely banned in any meaningful amount—in the first 60 days after registration.  The relevant provision was enacted in 1987 and reads as follows:

### § 253.037. Restrictions on Contribution or Expenditure by General-Purpose Committee

(a) A general-purpose committee may not knowingly make or authorize a political contribution or political expenditure unless the committee has:

---

[3] Available at http://www.ethics.state.tx.us/guides/pac_guide.pdf (last visited June 22, 2012).

(1) filed its campaign treasurer appointment not later than the 60th day before the date the contribution or expenditure is made; and

(2) accepted political contributions from at least 10 persons.

…

(c) Subsection (a) does not apply to a political party's county executive committee that is complying with Section 253.031 or to a general-purpose committee that accepts contributions from a multicandidate political committee (as defined by the Federal Election Campaign Act) [FN1] that is registered with the Federal Election Commission, provided that the general-purpose committee is in compliance with Section 253.032.

Tex. Elec. Code § 253.037, as amended by Acts 1987, 70th Leg., ch. 899, § 1, eff. Sept. 1, 1987; Acts 1993, 73rd Leg., ch. 531, § 1, eff. Sept. 1, 1993.  While on its face § 253.037 applies to an expenditure of any amount, the Texas Ethics Commission has mercifully interpreted the section to permit up to $500 in aggregate political disbursements before the 60-day and ten-contributor requirements are met, in order to harmonize it with a 1993 amendment to a related provision of the Election Code:

> Reading section 253.031(b)[4] and section 253.037(a) together, we conclude that the following rules apply to general-purpose committees: A general-purpose committee may not make or authorize political expenditures totaling more than $500 unless the committee has (1) filed its campaign treasurer appointment not later than the 60th day before the date the expenditure is made that causes the total expenditures to exceed $500, and (2) accepted political contributions from at least 10 persons.

Op. Tex. Ethics Comm'n No. 161 (1993) ("TEC AO 161"); *see also* 1 Tex. Admin. Code § 22.1(c).  In light of this regulatory interpretation, and in light of the statutory definitions of the

---

[4] In challenging the pre-registration requirement incorporated within § 253.037(a), Plaintiffs also state a challenge to § 253.031(b), which provides: "A political committee may not knowingly accept political contributiosn totaling more than $500 or make or authorize political expenditures totaling more than $500 at a time when a campaign treasurer appointment for the committee is not in effect."  Tex. Elec. Code §253.031(b).

relevant terms, § 253.037(a) decrees that three discrete conditions be met before any group of persons defined by the law as a "general purpose committee" may spend more than $500 on protected political expression.

35.     *First*, the "committee" must "file its campaign treasurer appointment."  Tex. Elec. Code § 253.037(a)(1); *see also* § 253.031(b).   The appointment must be filed with the Commission, on a form provided by the Commission, which requires the "committee" to not only appoint a campaign treasurer who assumes legal responsibility and must file campaign finance reports under penalty of perjury, but also, inter alia, to designate a committee address, designate the treasurer's physical and mailing address(es), and identify the individual(s) responsible for the committee's decisions as to contributions and expenditures.  *Id.* §§ 252.002; 252.003.[5]

36.     *Second*, the committee must accept political contributions from ten or more persons.  *Id.* § 253.037(a)(2).

37.     *Third*, even if the committee succeeds in collecting contributions from ten persons immediately, the committee still must wait 60 days.  *Id.* § 253.037(a)(1).

38.     These three requirements must be met not merely before the "committee" actually transfers more than $500 in funds (or any other thing of value) in the aggregate "in connection with any campaign for elective office or on a measure," but before it even agrees to do so, or incurs an obligation to do so, "whether [such agreement or obligation is] legally enforceable or not."  *See* Tex. Elec. Code §§ 251.001(7) (defining "political expenditure") and 251.001(6) (defining "expenditure").

---

[5] When Plaintiffs refer to a "registration" requirement in this litigation, the reference is to the requirement to file this appointment of campaign treasurer form, which formally establishes the committee.

39.     When it comes to political speech, there is an important distinction between independent spending and spending that is coordinated with the candidate who is supported or benefitted by the speech.  Federal law uses the term "independent expenditure" to refer to an expenditure for uncoordinated speech.  2 U.S.C. § 431(17); 11 C.F.R. § 100.16.  Texas describes the same activity as a "direct campaign expenditure":  "*Direct campaign expenditure* means a campaign expenditure that does not constitute a campaign contribution by the person making the expenditure."  Tex. Elec. Code § 251.001(8).  The Texas Administrative Code explains that "[a] campaign expenditure is not a contribution from the person making the expenditure if: (A) it is made without the prior consent or approval of the candidate or officeholder on whose behalf the expenditure was made; or (B) it is made in connection with a measure, but is not a political contribution to a political committee supporting or opposing the measure."  1 Tex. Admin. Code § 20.1(5); Op. Tex. Ethics Comm'n No. 331 (1996).  Putting these definitions together, an "expenditure" that is made "in connection with a campaign for elective office or on a measure" but "without the prior consent or approval" of the benefitting candidate is a "direct campaign expenditure" under Texas law, Tex. Elec. Code § 251.001(7), (8); Tex. Admin. Code § 20.1(5)(A), and is the equivalent, at least for present purposes, of an "independent expenditure" under Federal law,  *Osterberg v. Peca*, 12 S.W.3d 31, 36 n. 2 (Tex. 2000); Op. Tex. Ethics Comm'n No. 336 (1996).[6]  Nevertheless, because "direct campaign expenditures" are defined as a "campaign expenditure," *see* Tex. Elec. Code § 251.001(8), even such fully independent speech is subject to the three requirements of § 253.037(a).

---

[6] Plaintiffs will use the term "independent expenditures" or "IEs" interchangeably with the term "direct campaign expenditures," because the former is easier understood and is the term used in caselaw interpreting constitutional principles applicable to political advertising uncoordinated with candidates.  Where "independent expenditures" (or "IEs") is used, Plaintiffs are referring to expenditures constituting "direct campaign expenditures" under Texas law.

**Verified Complaint**                                    17

**Corporate contributions to Texas political committees**

40.     As a general rule, Texas law prohibits corporations, including nonprofit corporations, from making political contributions unless specifically authorized by subchapter D of the Election Code.   Tex. Elec. Code §§ 253.091; 253.094(a).   The only contributions authorized are "campaign contributions" made "in connection with an election on a measure only to a political committee for supporting or opposing measures exclusively," *Id.* § 253.096, and contributions made to political parties for certain limited purposes, *Id.* § 253.104.   Subchapter D also authorizes expenditures by a corporation to "finance the establishment or administration of a general-purpose committee," and provides a non-exhaustive list of permissible expenditures for committee "maintenance and operation."   *Id.* § 253.100(a)(1)-(12).

41.     Due to the expansive definition of "contribution," which includes "a direct or indirect transfer of money, goods, services, or any other thing of value," the corporate contribution prohibition includes a prohibition on in-kind contributions of anything of value "given with the intent that it be used in connection with a campaign for elective office or on a measure," unless such is made only to a "political committee for supporting or opposing measures exclusively."   *Id.* §§ 251.001(2), (3); 253.096.   Thus, while corporate contributions are permitted to a very narrow class of "specific purpose committee" organized for ballot measures, and to political parties for certain limited purposes, no corporation is permitted to make any contribution—whether monetary or in-kind—to a general-purpose committee.   No exception is provided for a purely ideological or issues-based nonprofit corporation with no past, present, or future business activities.

**Penalties**

42.     A corporation that violates the corporate contribution prohibition commits a third degree felony.  *Id.* § 253.094(c).  Third-degree felonies are punishable by 2-10 years in prison and a $10,000 fine.  Tex. Pen. Code § 12.34.  "An officer, director, or other agent of a corporation" responsible for a prohibited corporate contribution "is punishable for the grade of offense applicable to the corporation []."  *Id.* § 253.095.

43.     "A person" who "knowingly accept[s] a political contribution the person knows to have been made in violation" of the corporate contribution prohibition also commits a third degree felony.  *Id.* § 253.003(b), (e).

44.     A violation of § 253.037 is a Class A misdemeanor.  Tex. Elec. Code § 253.037(d).  Class A misdemeanors are punishable by up to one year in jail and a $4,000 fine. Tex. Pen. Code § 12.21.

45.     The district attorney of Bexar County, Texas may criminally prosecute violations of the statutes at issue in this case because defendants are residents of Bexar County.  Tex. Gov't Code § 571.171(a); Tex. Elec. Code § 251.004.

46.     The Commission may impose a civil penalty of $5,000 or triple the amount at issue, whichever amount is more, for a violation of a law administered and enforced by the Commission.  Tex. Gov't Code § 571.173.

47.     In addition to civil administrative enforcement and criminal penalties referenced above, violations of the statutes at issue in this case may result in liability for damages in a suit by plaintiffs' political opponents.  For knowingly making or accepting a campaign contribution or making a campaign expenditure in violation of § 253.037, where the contribution or expenditure is in support of a candidate, a person is liable for damages in the amount of twice the value of the unlawful contribution or expenditure and reasonable attorneys fees to each opposing

candidate.   Tex. Elec. Code § 253.131.   A corporation that knowingly makes a prohibited campaign contribution to a political committee is liable for damages in the amount of twice the value of the unlawful contribution and reasonable attorneys fees to each political committee of opposing interest in the election in connection with which the contribution or expenditure is made.   *Id.* § 253.132.   Violations of the statutes here at issue also may result in liability for damages to the state "in the amount of triple the value of the unlawful contribution or expenditure."   *Id.* § 253.133.   These damages penalties may be in addition to the civil penalties imposed by the Commission and any criminal liability.   *Id.* § 253.134.

### *Immediate Harm to Plaintiffs*

48.   TLC-IPA desires to communicate its ideas about candidates in time to influence voters before they cast their ballots in the primary runoffs.   TLC-IPA has acted as quickly as possible in light of the complicated campaign laws to establish itself.   It has specific plans for an advertisement supporting Dr. Donna Campbell .   Yet the TLC-IPA is absolutely prohibited from moving forward with distribution, or even contracting for production of the proposed speech, because § 253.037(a) prohibits it from doing so.   Early voting begins July 23, and Election Day is July 31.   Under the severe speech ban imposed by § 253.037(a), the TLC-IPA may not engage in its desired speech prior to August 6, after the election.   The TLC-IPA's First Amendment rights are being violated each day that the group is prohibited from spending the funds required to speak.

49.   The TLC-IPA further desires to communicate its proposed advertisement via email with the individuals contained in the TLC's contact list.   TLC desires to exercise rights of protected political association by contributing its contact list to TLC-IPA for such usage.   Yet

**Verified Complaint**                                           20

plaintiffs are absolutely prohibited from doing so by the corporate contribution ban at §
253.094(a).

50.     Every day that passes is another denial of TLC's and TLC-IPA's rights to speech
and association with respect to the primary runoffs.  For those candidates who do not advance
past the runoff elections, TLC and TLC-IPA will have lost completely the ability to support
those candidates in the manner desired.

51.     TLC and TLC-IPA contacted the counsel's office for the Commission as promptly
as possible, four days after registering on June 11.  Because the primary runoffs are fast
approaching, time does not permit awaiting a formal advisory opinion.  Plaintiffs therefore filed
this suit to vindicate their rights.    To date, plaintiffs have effectively been prevented from
exercising protected rights of speech and association.

52.     TLC will face a credible threat of prosecution if it contributes its contact list to
TLC-IPA in violation of § 253.094(a) for use with respect to independent expenditures.  TLC-
IPA will face a credible threat of prosecution under § 253.003(b) and (e) if it accepts the list as a
contribution.  TLC-IPA will face a credible threat of prosecution if it exceeds the paltry $500 in
political expenditures permitted under § 253.037 within the first 60 days after registration or
before it accepts contributions from ten persons.

53.     TLC-IPA is not willing to expose itself and its treasurer to criminal and civil
penalties and thus has been forced to refrain from speaking pending vindication of its
constitutional rights.

54.     TLC is not willing to expose itself and its board members to criminal and civil
penalties and thus has been forced to refrain from transferring its contact list to the TLC-IPA
pending vindication of its constitutional rights.

**Verified Complaint**                                              21

55.     TLC is further unwilling to expose itself to a potential adverse determination with respect to its application for recognition as a 501(c)(4) if the TLC were to engage in an amount of candidate advocacy deemed excessive by the Internal Revenue Service.  This is precisely the reason the TLC established TLC-IPA as a separate segregated fund.  TLC is also unwilling to expose its contributors to potential disclosure which may be required as a result of ongoing litigation that may determine whether contributors to 501(c)(4)s that run express advocacy election ads must be disclosed.  *See Van Hollen v. FEC*, -- F. Supp. 2d --, 2012 WL 1066717 (D.D.C. March 30, 2012).

### *Ongoing Harm to Plaintiffs*

56.     As soon as possible before the imminent primary runoff elections, plaintiffs would like to undertake the activity outlined above.  But for the specific prohibitions contained in the Texas Election Code, plaintiffs would have already have undertaken this desired free speech activity.

57.     The free speech and associational rights of others not before the Court will be similarly infringed as § 253.037(a) and § 253.094(a) are applied in future elections and enforced by these Defendants.  *See Storer v. Brown*, 415 U.S. 724, 737 n. 8 (1974).

58.     Plaintiff TLC may need to establish an additional political committee for use in a future election.  Unless the unconstitutionality of § 253.037(a) is recognized, TLC may not be permitted to do so in time to influence the relevant election.

59.     TLC or the individual responsible for its future general purpose committee (who, as now, would in all likelihood be a member or director of TLC itself) will face a credible threat of prosecution if the future committee engages in political expenditures or contributions in violation of § 253.037(a).

**Verified Complaint**                                           22

**COUNT 1**
**Section 253.037(a) is facially unconstitutional because it imposes a prior restraint on fully protected speech[7]**

60.     Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

61.     When two or more persons meeting the definition of a "general purpose committee" desire to spend money to speak about nonfederal candidates in Texas, before spending more than $500, obligating more than $500, or even distributing any materials valued at over $500, they must to do three things:  (i) register with the state; (ii) after registration, wait 60 days; and (iii) accept contributions from ten persons before speaking.  Both facially and as applied to plaintiffs (a committee only engaged in independent expenditures), the pre-registration, 60-day waiting period, and ten-contributor requirements constitute a prior restraint on political speech and association and unconstitutionally burden and chill these rights protected by the First and Fourteenth Amendments to the United States Constitution.

62.     Section 253.037(a) has deprived, and will continue to deprive, plaintiffs and others similarly situated of their fundamental rights protected by the First and Fourteenth Amendments.  Money damages cannot adequately compensate these constitutional injuries and, absent injunctive relief, the injuries will be irreparable.  There is no adequate remedy at law.

**Count 2**
**Section 253.037(a) imposes a waiting period for "political expenditures" that is unconstitutional as applied to TLC-IPA's independent expenditures because it is unsupported by any cognizable government interest**

63.     Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

---

[7] In challenging the pre-registration requirement incorporated in § 253.037(a) in Counts 1 and 2, Plaintiffs state a challenge to § 253.031(b) as well.  References to the pre-registration requirement should be taken to include § 253.031(b).

**Verified Complaint**                                      23

64.     Even apart from the fact that these restrictions impose a blatantly unconstitutional prior restraint on speech, they would be subject to strict scrutiny and fail.   Restrictions on independent expenditures that burden political speech are subject to strict scrutiny; that is, they must be narrowly tailored to achieve a compelling government interest.   *Citizens United v. FEC*, 130 S. Ct. 876, 898 (2010) (quoting *FEC v. Wis. Right to Life*, 551 U.S. at 464 (2007) (opinion of Roberts, C.J.).   The prevention of actual or apparent *quid pro quo* corruption is the only government interest sufficient to justify campaign finance restrictions.   *See Wis. Right to Life State PAC v. Barland*, 664 F.3d 139, 153 (7th Cir. 2011) (*citing FEC v. Nat'l Conservative Political Action Comm.*, 470 U.S. 480, 496-97 (1985)).   Because the Supreme Court has held as a matter of law that independent expenditures ("direct campaign expenditures" in Texas) "do not give rise to corruption or the appearance of corruption," *Citizens United*, 130 S. Ct. at 909, there is no compelling government interest served by restrictions on such expenditures.   Yet, the effect of the pre-registration requirement is to ban political speech until registration is executed.   In like manner, the 60-day waiting period imposed by § 253.037(a)(1) on political expenditures bans political speech until the 60 days expire, and the requirement imposed by § 253.037(a)(2) that a general-purpose committee accept contributions from ten persons before it may make political expenditures aggregating in excess of $500 is to ban political speech before the required contributions are accepted.   Therefore, Texas's law imposing a waiting period on independent expenditures for any meaningful amount of express political advocacy violates plaintiffs' First Amendment rights of speech and association.

65.     Section 253.037(a) has deprived, and will continue to deprive, plaintiffs and other similarly situated of their fundamental rights protected by the First and Fourteenth Amendments.

Money damages cannot adequately compensate these constitutional injuries and, absent injunctive relief, the injuries will be irreparable.  There is no adequate remedy at law.

### Count 3
### Section 253.037(a)(2)'s ten-contributor requirement is facially unconstitutional because it imposes "forced association" upon a group before it may speak meaningfully about candidates

66.     Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

67.     The ten-contributor requirement contained in § 253.037(a)(2) is not only an unjustified prior restraint but also unconstitutional forced association because it requires TLC-IPA to convince others to contribute to its cause before it may speak meaningfully about candidates.   The ten-contributor requirement violates plaintiffs' First Amendment rights of speech and association.

68.     Section 253.037(a)(2) has deprived, and will continue to deprive, plaintiffs and other similarly situated of their fundamental rights protected by the First and Fourteenth Amendments.  Money damages cannot adequately compensate these constitutional injuries and, absent injunctive relief, the injuries will be irreparable.  There is no adequate remedy at law.

### Count 4
### Section 253.094(a)'s prohibition on corporate contributions is unconstitutional as applied to contributions from TLC to TLC-IPA, an independent expenditure committee, because it is unsupported by any cognizable government interest

69.     Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

70.     As stated above, the TLC is a nonprofit, social welfare organization with no past, present, or future business activities.  It is incorporated for liability purposes.  The TLC intends to contribute its contact list to TLC-IPA so that the TLC-IPA may distribute its independent

expenditure advertisements to the individuals on the list and solicit contributions from individuals on the list.

71.     Prohibitions on corporate contributions are not constitutionally valid as applied to contributions to political committees for use exclusively with respect to independent expenditures.  The United States Supreme Court held in *Citizens United* that corporations may make unlimited independent expenditures from their general treasury funds.  130 S. Ct. at 913. In *SpeechNow.org v. Federal Election Commission*, the Court of Appeals for the District of Columbia Circuit relied on *Citizens United* to hold that federal limits on *contributions* from individuals to political committees engaged only in independent expenditures were unconstitutional.  599 F.3d 686, 689 (D.C. Cir. 2010) (en banc).

72.     Federal courts of appeal and district courts have applied the principles reiterated by the Supreme Court in *Citizens United* with regard to independent expenditure activity undertaken by political committees.  "Because *Citizens United* held 'as a matter of law that independent expenditures do not corrupt or create the appearance of quid pro quo corruption,' it followed inexorably that 'contributions to groups that make only independent expenditures also cannot corrupt or create the appearance of corruption.'"  *Barland*, 664 F.3d at 154 (*quoting SpeechNow.org*, 599 F.3d at 694).  Indeed, limits on contributions for independent expenditures were invalid even before *Citizens United*, and in particular with respect to nonprofit organizations.  *See, e.g., Emily's List*, 581 F.3d at 16-19.  If contribution limits serve no anticorruption purpose, then as a matter of law they violate the First Amendment if they suppress political speech, including speech by a corporation.  *American Tradition P'ship v. Bullock,* -- S. Ct. --, 2012 WL 2368660 (2012) (per curiam).

**Verified Complaint**                          26

73.     It follows, therefore, that the general ban on corporate contributions contained in § 253.094(a) violates plaintiff TLC's First Amendment rights of speech and association as applied to TLC's proposed in-kind contribution of a contact list to TLC-IPA for use exclusively with respect to distribution of independent expenditures.  Because TLC-IPA is prohibited from accepting this in-kind contribution, its First Amendment rights of speech and association are likewise violated.

74.     Section 253.094(a) has deprived, and will continue to deprive, plaintiffs and others similarly situated of their fundamental rights protected by the First and Fourteenth Amendments.  Money damages cannot adequately compensate these constitutional injuries and, absent injunctive relief, the injuries will be irreparable.  There is no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1.     A declaratory judgment that Texas Election Code § 253.037(a) is facially unconstitutional as it constitutes a prior restraint on the political contributions or expenditures of any general purpose committee;

2.     A declaratory judgment that Texas Election Code § 253.037(a) is unconstitutional as applied to a general purpose committee that makes only independent expenditures;

3.     A declaratory judgment that Texas Election Code § 253.031(b) is facially unconstitutional as it constitutes a prior restraint on the political contributions or expenditures of any political committee;

4.     A declaratory judgment that Texas Election Code § 253.031(b) is unconstitutional as applied to a political committee that makes only independent expenditures;

**Verified Complaint**                                      27

3.       A declaratory judgment that Texas Election Code § 253.094(a) is unconstitutional as applied to contributions from a corporation to support independent expenditures;

4.       Preliminary and permanent injunctions enjoining Defendants from enforcing § 253.037(a) against TLC-IPA;

5.       Preliminary and permanent injunctions enjoining Defendants from enforcing § 253.094(a) against TLC and TLC-IPA as applied to contributions from TLC to support independent expenditures;

6.       An award of nominal damages for the violation of TLC and TLC-IPA's constitutional rights;

7.       Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 or any other applicable statute or authority; and

8.       Any other relief that the Court deems just and appropriate.

Dated June 28, 2012.

**Verified Complaint**                                             28

Respectfully submitted,


Jerad Wayne Najvar
Texas Bar No. 24068079
NAJVAR LAW FIRM
One Greenway Plaza, Suite 225
Houston, TX 77046
281.404.4696 phone
713.965.9076 fax
jerad@najvarlaw.com
*Counsel for Plaintiffs*

Stephen M. Hoersting*
Ohio Bar No. 0066915
700 E. Schantz Ave.
Dayton, OH 45419
937.623.6102 phone
937.723.6069 fax
hoersting@gmail.com
*Of Counsel for Plaintiffs*

*Motion for admission *Pro Hac Vice* to be filed.