

FILED

2015 JAN 30 PM 3: 25

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

CATHOLIC LEADERSHIP COALITION OF
TEXAS et al.,
                    **Plaintiffs,**

-vs-                                                        **Case No. A-12-CA-566-SS**

DAVID A. REISMAN, in his official capacity as
Executive Director of the Texas Ethics
Commission, et al.,
                    **Defendants.**

_____

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Plaintiffs' Joint Motion for Attorneys' Fees and Costs [#86], Defendants' Response [#87] thereto, and Plaintiffs' Reply [#88] thereto.  Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders GRANTING the motion IN PART and DENYING the motion IN PART.

### Background

On June 28, 2012, Plaintiffs Catholic Leadership Coalition of Texas and Texas Leadership Coalition—Institute for Public Advocacy filed suit challenging the constitutionality of various provisions of the Texas Election Code which regulated the formation of "general-purpose" political committees in Texas.  A general-purpose political committee is a type of political committee "dedicated to supporting candidates of a particular point of view[.]" *Catholic Leadership Coal. v. Reisman*, 764 F.3d 409, 414 (5th Cir. 2014).  Specifically, pursuant to 42 U.S.C. § 1983, Plaintiffs

brought facial and as-applied First Amendment challenges to three statutory prerequisites a general-purpose committee was required to meet before it could fully engage in political activity: first, the requirement it appoint a treasurer (the treasurer-appointment requirement); second, the requirement it refrain from accepting more than $500 in contributions or authorizing more than $500 in expenditures for sixty (60) days after the treasurer is appointed (the 60-day limit); and third, the requirement it receive donations from at least ten contributors (the ten-contributor requirement). *Id.* at 416–17. Plaintiffs further challenged a provision of the code barring corporations and labor organizations from ever making political contributions without specific authorization (the corporate contribution ban). *Id.* at 413–14. Defendants were members of the Texas Ethics Commission, the entity charged with enforcing the Texas Election Code, and Susan Reed, the District Attorney empowered to prosecute Plaintiffs for violations of the challenged provisions.

On June 29, 2012, Plaintiffs filed a motion for preliminary injunction. *See* Mot. Prelim. Inj. [#6]. Following hearing on July 12, 2012, the Court denied the motion, finding emergency equitable relief "improper in light of the complexity of the legal issues presented, the short time Plaintiffs have given the Court to resolve those issues, and the extraordinary potential for harm if a wrongful injunction should issue." July 19, 2012 Order [#32] at 2. On July 23, 2012, Plaintiffs appealed to the Fifth Circuit, but on July 25, 2012, the Fifth Circuit affirmed denial of the preliminary injunction in a very brief opinion, noting the court was "unpersuaded" there was a likelihood of success on the merits of Plaintiffs' challenge to the 60-day waiting period. *Catholic Leadership Coal. v. Reisman*, 473 F. App'x 402, 403 (5th Cir. 2012) (unpublished) (per curiam).

While the motion for preliminary injunction was pending, Defendant Susan Reed filed a motion to dismiss, *see* Reed's Mot. Dismiss [#12], which the Court granted on August 3, 2012,

holding the issue of criminal prosecution of Plaintiffs for any violation of the Election Code was moot, given the elections had already occurred. *See* Aug. 2, 2012 Order [#37].

Following denial of the preliminary injunction, two new complaints were filed, adding two new plaintiffs—Friends of SAFA Texas and Texas Freedom PAC—to the litigation. *See* First Am. Compl. [#41] at 1; Second Am. Compl. [#49] at 1. Further, the new complaints named Susan Reed as a defendant once again, as Reed had refused to confirm in writing she would not seek to prosecute Plaintiffs while the litigation was pending. *See* First Am. Compl. [#41] at 1; Mot. Attorney's Fees [#86] at 4 n.2. On December 18, 2012, Reed filed a motion to dismiss the Second Amended Complaint, Reed Mot. Dismiss II [#55], which the Court denied on January 9, 2013. Jan. 9, 2013 Order [#58].

Defendants (with the exception of Reed) thereafter filed a motion for summary judgment on April 5, 2013, *see* Reisman et al. Mot. Summ. J. [#60], while Reed filed her second motion to dismiss or, in the alternative, motion for summary judgment. *See* Reed Mot. Dismiss or Mot. Summ J. [#61]. Plaintiffs filed a cross-motion for summary judgment two days later. Pls.' Mot. Summ. J. [#62]. In a lengthy and detailed opinion, the Court held all of the challenged Election Code provisions passed constitutional muster, granted both motions for summary judgment pending against Plaintiffs, and entered a judgment to that effect. *See* May 30, 2013 Order [#68] at 35; Judgment [#69].

Plaintiffs appealed from the Court's judgment, and on appeal, the Fifth Circuit affirmed in part and reversed and remanded in part, holding the ten-contributor requirement and the 60-day limit were unconstitutional. *See Reisman*, 764 F.3d at 414. Following remand, on November 14, 2014, the Court entered a final judgment consistent with the Fifth Circuit's opinion, adjudging the ten-

contributor requirement and the 60-day limit facially unconstitutional and permanently enjoining defendants from enforcing same. *See* Final Judgment [#85]. Consequently, at the close of the merits, both parties achieved partial victories: the treasurer-appointment requirement and the corporate contribution ban withstood attack, while the remaining challenged provisions fell.

Turning to the instant motion: on December 1, 2014, Plaintiffs moved for an award of attorney's fees pursuant to 42 U.S.C. § 1988(b). Plaintiffs request $236,544.47 in fees and expenses, broken down by 733.2 hours billed by Jerad Navjar, lead counsel, at $285 per hour; 97.3 hours billed by Navjar's law clerks, at $65 per hour; 58 hours billed by Stephen Hoersting, of counsel, at $300 per hour; and $3,857.97 in "reasonable and necessary out of pocket expenses[.]" Mot. Attorney's Fees [#86] at 17–18. Defendants oppose Plaintiffs' motion, claiming Plaintiffs do not qualify as "prevailing parties" under § 1988, as is required to be eligible for a fee award, and even if Plaintiffs do qualify, the Court should reduce the amount of fees they claim.   Resp. [#87] at 3.

## Analysis

### I.     Motion for Attorney's Fees—42 U.S.C. § 1988

Under 42 U.S.C. § 1988, a "prevailing party" in an action brought under 42 U.S.C. § 1983 may be awarded, in the court's discretion, reasonable attorney's fees as part of its costs. 42 U.S.C. § 1988; *Univ. Amusement Co., Inc. v. Vance*, 587 F.2d 159, 172 (5th Cir. 1978).  To qualify as a prevailing party, the plaintiff (1) "must achieve judicially-sanctioned relief, (2) the relief must materially alter the legal relationship between the parties, and (3) the relief must modify the defendant's behavior in a way that directly benefits the plaintiff at the time the relief is entered." *Petteway v. Henry*, 738 F.3d 132, 137 (5th Cir. 2013). To "prevail" under § 1988, the party seeking fees need not procure a favorable judgment on every claim. *Jenevein v. Willing*, 605 F.3d 268, 270

(5th Cir. 2010). Where the plaintiff's success on a legal claim can be described as "purely technical or *de minimis*," however, he is not a prevailing party. *Id.* (citing *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989)). Yet a plaintiff's success need not address the central claim of the case; prevailing-party status is appropriate where the plaintiff succeeds on "'any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Petteway*, 738 F.3d at 137 (citing *Tex. State Teachers Ass'n*, 489 U.S. at 789).

Defendants argue Plaintiffs are not prevailing parties because the final judgment in this case "offered no material benefits to Plaintiffs themselves 'at the time of judgment.'" Resp. [#87] at 4 (emphasis omitted). Defendants claim because the Court denied Plaintiffs' motion for preliminary injunction and the election had occurred by the time the Court entered final judgment, no order ever issued enjoining enforcement of any portion of the Election Code at a time benefitting Plaintiffs. Further, Defendants claim the Court's judgment had no material effect on Plaintiffs at the time of judgment because the provisions ultimately held unconstitutional "no longer served as a bar to Plaintiffs' political committee activity at the time judgment was entered." *Id.* at 5. Thus, in Defendants' view, Plaintiffs are not entitled to fees.

The Court disagrees with Defendants. In its opinion affirming in part, reversing in part, and remanding this case, the Fifth Circuit specifically found the 60-day limit stymies the political activities of a general-purpose committee even after that committee's own 60-day window has passed, as it "limits the committee's ability to receive contributions from newly-formed general-purpose committees" subject to the same requirement. *Reisman*, 764 F.3d at 423. Consequently, at the time the Court entered its judgment permanently enjoining enforcement of the 60-day limit, the general-purpose committee Plaintiffs—Texas Leadership Coalition—Institute for Public

Advocacy, Friends of SAFA Texas, and Texas Freedom PAC—received a material benefit. So too did the Catholic Leadership Coalition, as invalidation of the requirement ensured the Coalition would not be affected by it in the future if the Coalition sought to form another general-purpose committee. *See id.* ("Moreover, the [Catholic] Leadership Coalition is not limited to trying to form only one general-purpose committee. As such, given its professed desire to continue trying to educate Catholic voters regarding their religious obligations, it is reasonable to believe [the Coalition] may again be impacted by [the 60-day limit].").

Further, to the extent Defendants argue Plaintiffs' success was so limited it does not merit an award of fees, the Court again disagrees. The 60-day limit and the ten-contributor requirement were "significant issue[s] in [this] litigation," and in ultimately securing invalidation of same, Plaintiffs "achieved some of the benefit [they] sought in bringing suit[.]" *Tex. State Teachers Ass'n*, 489 U.S. at 791–92 (internal alterations omitted). The cases Defendant cites in support of its contrary position are inapposite. In *Jenevein v. Willing*, for example, the Fifth Circuit found the plaintiff, a state judge who sued the Texas State Commission for expungement of a censure from his record, was not a prevailing party, despite the fact the censure was partially expunged by the district court's final judgment. 605 F.3d at 269. The panel explained the relief the plaintiff obtained was *de minimis*, as it "left almost all of the original censure order untouched," and the violations leading to the censure remained on the judge's record. *Id.* at 271.

Here, in contrast, two key provisions of the election statutes challenged by Plaintiffs were stricken down as facially unconstitutional; consequently, Defendants may no longer enforce those provisions against Plaintiffs or against any other general-purpose political committees. That outcome has not only changed the legal relationship between Plaintiffs and Defendants, it has

materially altered provisions of the Texas Election Code which limited general-purpose committees'

First Amendment rights prior to this litigation.  Given all of the above, the Court finds Plaintiffs are

prevailing parties within the meaning of § 1988, and are therefore eligible for an award of reasonable

attorney's fees.

## II.      Calculation of Attorney's Fees

The Fifth Circuit uses a two-step process to calculate attorney's fees.  *Heidtman v. Cnty. of*

*El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999).  First, a court calculates a "lodestar" figure "by

multiplying the number of hours reasonably expended by an appropriate hourly rate in the

community for such work."  *Id.*  In so doing, the court considers whether the attorneys demonstrated

proper billing judgment by "writing off unproductive, excessive, or redundant hours."  *Walker v.*

*U.S. Dep't of Housing & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996).  The plaintiff has the burden

of showing the reasonableness of the hours billed and proving the exercise of billing judgment.  *Id.*

at 770.

After calculating the lodestar, the court may increase or decrease it based on the factors set

forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

*Heidtman*, 171 F.3d at 1043.  Those factors are: (1) the time and labor required by the litigation;

(2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services

properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether

the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the

amount involved and results obtained; (9) the experience, reputation, and ability of the attorney;

(10) the undesirability of the case; (11) the nature and length of the professional relationship with

the client; and (12) the award in similar cases.  *Id.* at 1043 n.5 (citing *Johnson*, 488 F.2d at 717–19).

Where a prevailing party was only partially successful, the court must consider two further issues: first, the relationship between the claims on which the plaintiff succeeded and those on which he did not, and second, whether the plaintiff achieved a level of success that makes the hours expended a satisfactory basis for a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Specifically, in a suit where the plaintiff presents "distinctly different claims for relief that are based on different facts and legal theories[,] . . . work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved"; thus, no fee award for that work is permitted. *Id.* at 434–35 (internal quotes omitted). In contrast, where the suit "involve[d] a common core of facts" or was "based on related legal theories," the court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435.

Here, as previously noted, Plaintiffs request a total award of $236,544.47 in fees and expenses, broken down as follows: 733.2 hours billed by Jerad Navjar, lead counsel, at $285 per hour; 97.3 hours billed by Navjar's law clerks, at $65 per hour; 58 hours billed by Stephen Hoersting, of counsel, at $300 per hour; and $3,857.97 in "reasonable and necessary out of pocket expenses[.]" Mot. Attorney's Fees [#86] at 17–18. Defendant does not dispute the reasonableness of the hourly rates charged by Navjar, his law clerks, or Hoersting, and the Court finds those hourly rates to be in accord with the prevailing market rates in the Western District of Texas. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984) (stating reasonable fees under § 1988 are calculated according to prevailing market rates in the relevant community); *see also* Mot. Attorney's Fees [#86-4] (Lill Aff.) ¶ 6 (averring hourly rates claimed by Plaintiffs are well within market rates). The parties do dispute the reasonableness of the number of hours Plaintiffs claim for work performed, however, and

what reduction is warranted by Plaintiffs' partial victory.   Further, the parties dispute the reasonableness of the out-of-pocket expenses claimed by Plaintiffs.  The Court addresses each area of contention in turn.

A.      **Reasonableness of Hours Claimed for Work Performed**

Defendants first contend all of the hours expended by Plaintiffs in preparing the motion for preliminary injunction filed at the outset of this litigation should be disallowed, claiming the motion constituted an "unsuccessful claim."  *See* Resp. [#87] at 9; *see Hensley*, 461 U.S. at 435 ("[N]o fee may be awarded for services on the unsuccessful claim.").   The Court disagrees.  Defendants' argument mischaracterizes *Hensley*, mistaking an interlocutory motion for a claim.  The *Hensley* Court used that language to distinguish "distinctly different claims for relief that are based on different facts and legal theories" in determining which claims were successful and which were not. *See Hensley*, 461 U.S. at 434–35.  Of course, the claims raised in Plaintiffs' motion for preliminary injunction were the same as those ultimately adjudicated.  Defendants' categorical objection to inclusion of the hours Plaintiffs' counsel spent working on the motion for preliminary injunction is overruled.

Defendants further argue for excision of hours Plaintiffs spent on work performed before the Texas Ethics Commission, which was not work concerning this litigation itself.  Plaintiffs did not respond to this objection in their Reply, and the Court agrees this time should be disallowed.  8.2 hours of Navjar's time and .8 hours of Hoersting's time must therefore be subtracted from the total allowable hours.[1]

---

[1] *See* Mot. Attorney's Fees [#86-2] (Navjar Aff.), Ex. A-2 (Navjar Log), at 1 (6.7 hours on 6/5/12; .4 hours on 6/7/12; .3 hours on 6/11/12; .2 hours on 6/11/12; .6 hours on 6/11/12); *Id.* [#86-3] (Hoersting Aff.), Ex. A (Hoersting Log), at 1 (.3 hours on June 5, 2012; .5 hours on June 6, 2012).

Defendants next object to the inclusion of hours for work performed by law clerks, claiming the work is either vaguely described or unrelated to either issue on which Plaintiffs prevailed. Resp. [#87] at 10. Again, Plaintiffs do not respond to this argument in their Reply. Most of the work of which Defendants complain appears related to a 50-state survey of political action committee registration laws. *See* Resp. [#87-3] (Annotated Law Clerk Log) at 1. While law clerks' work is properly taken into account in awarding fees under § 1988, *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 287 (1989), it remains the plaintiff's burden to show the reasonableness of those hours. *Walker*, 99 F.3d at 770. As Plaintiffs have offered no reasoning as to why a 50-state survey of political action committee registration laws (or several other tangential background areas of research) should be compensable, the Court will subtract 41.2 law clerk hours from the total allowable hours.[2] As to Defendants' vagueness objection, the Court agrees several entries in the law clerk time log are extremely thin on description. Mindful law clerks are less experienced than practiced attorneys in billing time, however, the Court will disallow on vagueness grounds only 2.5 additional hours, marked as "check on status of 2 cases, scheduling orders" and "5th Circuit info."[3] Accordingly, the Court will subtract a total of 43.7 hours from the total allowable hours billed by law clerks.

The Court further finds Plaintiffs have failed to adequately demonstrate billing judgment, warranting additional reductions in the lodestar, as in addition to the hours subtracted above, Plaintiffs failed to write off other "unproductive, excessive, or redundant" hours. *Walker*, 99 F.3d at 769. Plaintiffs contend they exercised billing judgment by refraining from recording at all

---

[2] *See* Navjar Aff., Ex. A-3 (Law Clerk Log), at 1 (all hours billed from 9/21/13 to 9/30/13; 8.2 hours on 10/1/13; 6.2 hours on 12/16/13; 3.4 hours on 12/17/13; 3.2 hours on 12/21/13).

[3] Law Clerk Log at 1 (2 hours billed on 3/21/13; .5 hours billed on 4/10/14).

additional hours they worked but would not have billed to clients, and by refraining from including hours dedicated to their argument the treasurer-appointment requirement was an unconstitutional prior restraint. Mot. Attorney's Fees [#86] at 16. Neither of these things, however, demonstrate billing judgment. Failure to record hours actually expended creates no record upon which a court can assess billing judgment, *see Walker*, 99 F.3d at 769 ("[T]here is no record of any such billing judgment, as the plaintiffs allege that they wrote off hours before recording them."), and hours dedicated to an issue upon which Plaintiffs did not prevail are non-compensable. *See Hensley*, 461 U.S. at 434–35. Additionally, based upon the undersigned's own knowledge and experience of the time required to complete similar tasks, it appears to the Court the amount of time billed for the drafting of various documents in the case was excessive. For example: Plaintiffs billed 66.4 hours spent on tasks related to drafting their preliminary injunction memo; 27.1 hours spent on preparing their amended complaint; 60.2 hours spent on preparing their motion for summary judgment; 5.5 hours on "prepar[ing a] letter to potential amici"; and 92.5 hours spent preparing their brief on appeal. *See* Navjar Log, *passim*; Hoersting Log, *passim*.

      The proper remedy when plaintiffs fail to carry their burden to demonstrate billing judgment "is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment." *Walker*, 99 F.3d at 770 (reducing the hours awarded by 15%). Upon review of the record, the Court has determined a reduction of 10% of the total number of hours awarded is appropriate.

## B.    Plaintiffs' Success

      Plaintiffs argue the two claims on which they prevailed were the primary claims in the case, and characterize the two claims on which they failed—the as-applied challenge to the corporate

contribution ban and the facial and as-applied challenge to the treasurer-appointment requirement—as "tertiary claims." Mot. Attorney's Fees [#86] at 14. Unsurprisingly, Defendants minimize Plaintiffs' victory on appeal, characterizing it as "*de minimus* success" warranting a fifty-percent reduction in the lodestar.

As so often is the case, the Court believes the truth of the matter lies between the two poles. Plaintiffs neither "failed entirely to succeed on the most sweeping claims for relief they made in the case," *see* Resp. [#87] at 11, nor "clearly achieved total success on . . . the claims against the two statutory provisions that caused the most severe damage[,]" *see* Mot. Attorney's Fees [#86] at 14. The Court does agree with Plaintiffs' characterization of the as-applied corporate contribution issue as significantly less important to the case than the other three challenges, and notes the corporate contribution issue turned on facts not material to resolution of the other three, including the nature of Texas Leadership Coalition—Institute for Advocacy as a "hybrid" political committee and the nature of the "contribution" (an email list) it sought to accept. *See Reisman*, 764 F.3d at 442–45. Plaintiffs do not dispute time spent on the corporate contribution issue is non-compensable because it "was not 'expended in pursuit of the ultimate result achieved,'" Mot. Attorney's Fees [#86] at 14, and represent they removed 13.8 hours spent doing work related to the corporate contribution issue from their fee request. Upon review of the time log, the Court did not find, and Defendants do not point to, any additional hours spent on the corporate contribution issue which need be subtracted.

Concerning the failed treasurer-appointment requirement claim, it appears Plaintiffs have voluntarily subtracted no hours from their fee request. Plaintiffs argue the treasurer-appointment requirement claim and the claims on which Plaintiffs were successful "involve[d] a common core of facts" and were "based on related legal theories," *Hensley*, 461 U.S. at 435, and because the

-12-

treasurer-appointment requirement was incorporated in the text of the 60-day limit, hours spent on those two claims are "'difficult to divide.'" Mot. Attorney's Fees [#86] at 16 (quoting *Hensley*, 461 U.S. at 434). Further, Plaintiffs contend research related to the treasurer-appointment requirement "likely contributed to [Plaintiffs'] victory by focusing attention on the necessity of immediate speech[.]" *Id.* at 15–16. The Court disagrees with Plaintiffs. As previously noted, Plaintiffs argued the treasurer-appointment requirement was an unconstitutional prior restraint on speech, and specifically, whether it was the sort of impermissible "regulation[] that require[s] registration" before a speaker is permitted to speak. *Reisman*, 764 F.3d at 437 (citing *Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton*, 536 U.S. 150 (2002); *Thomas v. Collins*, 323 U.S. 516 (1945)). In contrast, the salient question in analyzing the 60-day limit was whether it unconstitutionally burdened expenditures and contributions. *Id.* at 427. Stated differently, the prior restraint question involves requiring a speaker to obtain permission to speak, while the other involves whether and to what extent a ceiling may be placed on speech. The legal theories undergirding the two arguments are separable. The Court therefore concludes hours spent performing work related to the treasurer-appointment requirement are not compensable. *See Hensley*, 461 U.S. at 434–35.

As Plaintiffs do not identify the hours specifically related to work concerning the treasurer-appointment requirement, the Court believes the simplest course of action is to reduce the total dollar amount of the award (after the reductions outlined above have been taken) by an additional one-third, as the causes of action other than the as-applied corporate contribution challenge—the two on which Plaintiffs emerged victorious and the treasurer-appointment requirement— were roughly equivalent in importance to the case. *See, e.g., id.* at 436 ("The district court may attempt to identify specific

hours that should be eliminated, or it may simply reduce the award to account for the limited success.").

## C.    Out-of-Pocket Expenses

Finally, the Court agrees with Defendants that Plaintiffs' claimed out-of-pocket expenses are excessive.  Reasonable out-of-pocket expenses, including charges for photocopying and travel, are recoverable in § 1988 fee awards because they are part of the expenses normally charged to a client. *Assoc. Builders & Contractors of La., Inc. v. Orleans Parish Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990).  Any award of expenses is committed to the district court's discretion.  *Id.*

Here, the Court notes at the outset several of Plaintiffs' itemized "expenses," including the amounts claimed for this District's filing fee, service of process, and hearing transcripts, are properly considered court costs, not expenses.  *See* 28 U.S.C. § 1920 (itemizing types of court costs); *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) (explaining under § 1988, "[o]ut-of-pocket litigation expenses are reimbursable as part of the attorneys' fee, distinct from the costs . . . awarded . . . under 28 U.S.C. § 1920"); *see also* 10 WRIGHT & MILLER ET AL., FED. PRAC. & PROC. CIV. § 2666.  To request taxation of court costs, Plaintiffs were required to file a Bill of Costs with the Court within fourteen days following entry of this Court's final judgment, as is required by the Local Rules of this District.  *See* Local Rule CV-54(a).  Plaintiffs failed to do so.  The Court suspects Plaintiffs may have been confused by language in the judgment indicating the parties were free to file motions for costs.  In any event, under the circumstances, the Court will permit Plaintiffs to file a Bill of Costs with the Court within seven (7) days from the date of entry

of this Order, and Defendants will thereafter be permitted to file any objections thereto.[4]  The court

costs listed on Plaintiffs' expense list are therefore disallowed on the instant motion.

Of the remaining items listed, the Court will permit reimbursement only for those expenses

associated with travel to New Orleans for oral argument during the appeal from this Court's

judgment. As for the remainder: Those expenses concerning travel from Houston to Austin, or from

Houston to San Antonio, are disallowed as unnecessary.  The distance between Houston, Austin, and

San Antonio is not so great as to warrant hotel and airfare expenses.  The $671.85 claimed for

"Depositions—electronic copy" is disallowed as vague; the Court cannot tell what is being claimed

or why it was needed.[5]  Requests for reimbursement of fees paid to Capital Research Services for

research on legislative history are also disallowed, given the myriad other less costly resources

available to attorneys researching statutory history.  Finally, those expenses related to postage are

disallowed, as postage is an overhead expense typical to any law practice.  Consequently, of the

$3,857.97 claimed in expenses, the Court will allow $710.48.

---

[4] Defendants request the Court require each party to bear their own costs, arguing Plaintiffs "did not secure meaningful relief" in this case. Resp. [#87] at 12.  The Court disagrees for the reasons already stated in section I of this opinion. Under Federal Rule of Civil Procedure 54(d), costs "should be allowed to the prevailing party" unless "a federal statute, these rules, or a court order provides otherwise[.]" FED. R. CIV. P. 54(d)(1).  The Court has determined Plaintiffs are prevailing parties. *See supra* section I.  Accordingly, the Court finds Plaintiffs are entitled to costs. *See, e.g., Energy Mgmt. Corp. v. City of Shreveport*, No. CIV A 97-2408, 2006 WL 3230777, at *1 (W.D. La. Nov. 6, 2006) (citing *Studiengesellschaft Kohle v. Eastman Kodak Co.*, 713 F.2d 128, 131 (5th Cir. 1983)).

[5] If "Depositions—electronic copy" refers to electronically recorded deposition transcripts reasonably and necessarily procured for use in the litigation, *see* 28 U.S.C. § 1920(2), Plaintiffs are free to submit a claim for same in their Bill of Costs.

**Conclusion**

The Court therefore awards Plaintiffs, pursuant to 42 U.S.C. § 1988(b), a total of $137,074.15, calculated as follows: after the reductions in hours explained in section II.A,[6] there remains 652.5 hours of Navjar's time, billed at $285 per hour, 48.2 hours of law clerks' time, billed at $65 per hour, and 51.5 hours of Hoersting's time, billed at $300 per hour, for a total lodestar of $204,545.50; less one-third ($68,181.83) to account for Plaintiffs' partial victory, bringing the total to $136,363.67; plus $710.48 in expenses, for a grand total of $137,074.15.

Accordingly,

IT IS ORDERED that Plaintiffs shall file a Bill of Costs with the Court within seven (7) days from date of entry of this Order; and

IT IS FINALLY ORDERED that Plaintiffs' Joint Motion for Attorneys' Fees and Costs [#86] is GRANTED IN PART and DENIED IN PART as described in this opinion.

SIGNED this the 30th day of January 2015.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE

---

[6] Navjar: 733.2 hours less 8.2 hours = 725 hours, less 10% (72.5 hours) = 652.5 hours; Law Clerks: 97.3 hours less 43.7 hours = 53.6 hours, less 10% (5.36 hours) = 48.2 hours; Hoersting: 58 hours less 0.8 hours = 57.2 hours, less 10% (5.72 hours) = 51.5 hours.